FILED & ENTERED

DEC 23 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY RUST      DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>JORGE ORTEGA,<br><br>                    Debtor.<br>_____<br><br>JORGE ORTEGA,<br><br>                    Plaintiff,<br>vs.<br><br>JOHN F. NICHOLSON, Attorney, and<br>TIFFANY T. SHAHBAZ, Attorney,<br><br>                    Defendants.<br>_____ | CASE NO. 9:09-bk-10989-RR<br><br>Chapter 7<br><br>Adv. No. 9:09-ap-01144<br><br>ORDER DENYING REQUEST<br>FOR RECUSAL AND DENYING<br>MOTION TO REOPEN |

**I    Procedural Background**

    <u>The Bankruptcy cases</u>

    Debtor filed a Chapter 13 petition (09-bk-10989), through counsel, Gary Crowder, on March 25, 2009.  The Chapter 13 case was dismissed on May 22, 2009, for a failure to make pre-confirmation payments.

1

The Chapter 13 case was not immediately closed, however, due to the filing of two adversary complaints. Debtor filed Ortega v. Nicholson, et al, 09-ap-1144, on July 7, 2009, for a violation of the automatic stay. That complaint named as defendants John F. Nicholson, Jennifer Marie Goldstein, Tino Garcia and Montecito Bank & Trust. Garcia and Montecito Bank & Trust were later dismissed and Tiffany Shahbaz was named in place of Goldstein. Details of the resolution of 09-ap-1144 are set forth below.

A second adversary, Ortega v. Central Mortgage Co, U.S. Bank, et al, 09-ap-1286, was filed on November 6, 2009, against Central Mortgage Co, William G. Malcolm, U.S. Bank, Downey Savings & Loan Assn, Recovery Management Systems Corp, and Ramesh Singh. That complaint sought to restore legal title to the Debtor's foreclosed residence, for injunctive relief, for declaratory judgment, and for violation of the automatic stay. Details of the resolution of 09-ap- 1286 are set forth below.

The Chapter 13 case 09-bk-10989 was closed on December 29, 2010.

Debtor filed a second bankruptcy petition, a Chapter 7 petition (09-bk-12301), again through Mr. Crowder, on June 12, 2009. The case was converted to Chapter 13 on September 4, 2009, then reconverted to Chapter 7 on February 16, 2010. Central Mortgage moved for relief from stay on February 19, 2010. Relief from stay was granted at hearing on March 31, 2010. Chapter 7 Trustee Namba's no asset report was filed on May 5, 2010, and the debtor (and his wife) received a discharge on August 4, 2010. The Chapter 7 case

was closed on August 20, 2010.    A subsequent motion to reopen that case filed by Nicholson, and opposed by the Debtor, was denied on November 24, 2010.

The Adversary Proceedings

Adversary 09-ap-1144 Ortega v. Nicholson, Montecito Bank and Trust, et al

The adversary against Attorney John F. Nicholson, Attorney Jennifer Goldstein, Tino Garcia and Montecito Bank and Trust was filed on July 7, 2009.  The complaint alleged that Defendants executed a levy (on Debtor's bank account) while the automatic stay was in place.  Debtor alleged that the violation of the automatic stay was deliberately done with the intention to deprive debtor of the funds he needed to make post-petition payments under his Chapter 13 plan, which resulted in the dismissal of his Chapter 13 case.  It is alleged that Debtor informed Defendants Nicholson and Goldstein of the bankruptcy filing on March 26, 2009.

Debtor's complaint alleged that on April 29, 2009, Debtor obtained three cashier's checks from Montecito Bank & Trust – two issued to the Chapter 13 Trustee and one to Central Mortgage.

On May 19, 2009, Debtor attempted to obtain two cashier's checks for his May and June mortgage payments and two cashier's checks for his post-petition Plan payments.  At that time he was informed that Nicholson, Goldstein, Garcia and Montecito Bank & Trust had filed a levy on his account.  Thus, Debtor was unable to obtain the necessary cashier's checks to make his payments and his bankruptcy case was dismissed.

3

On June 3, 2009, Nicholson and Goldstein filed a proof of claim acknowledging that debtor had filed a Chapter 13 petition.  Debtor requested the release of funds due to the violation of the stay, but Defendants refused.  It is further alleged that debtor then filed a Chapter 7 petition in an effort to recover the funds withheld

An amended complaint was filed on July 13, 2009.  In place of Defendant Goldstein, the amended complaint named Attorney Tiffany Shahbaz.

On October 21, 2009, Defendants Garcia and Montecito Bank & Trust filed a motion for summary judgment.  Prior to that motion coming on for hearing, on November 3, 2009, Debtor voluntarily moved to dismiss Defendants Tino Garcia and Montecito Bank & Trust.

Defendant Shahbaz filed a motion for summary judgment, which motion was denied on January 19, 2010.

On May 7, 2010, Defendants Shahbaz and Nicholson filed a motion to compel deposition of Debtor, responses to interrogatories, requests for admission, and for production of documents.  At the pre-trial conference on June 8, 2010, the court discussed the discovery dispute with counsel.  The Court ordered the Debtor to comply with discovery by July 9, 2010, and admonished Mr. Crowder if the Debtor failed to comply with discovery, the Court would strike the complaint and entered judgment for the Defendants.  As to the request for sanctions, provided Debtor and Mr. Crowder comply with the court's orders, the court stated it would not impose sanctions.  However, if the Defendants needed to bring another discovery motion, the court stated it would award sanctions for the present and future

motions.

At the pretrial hearing on September 14, 2010, the matter was set for trial on January 6, 2011.

Defendants Nicholson and Shahbaz filed a second motion for sanctions on November 1, 2010, and a motion to continue the trial on December 13, 2010.  The Court continued the trial date to April 7, 2011, and set the sanctions motion for hearing on Feb. 11, 2011.  At hearing, the Court granted the sanctions motion and awarded Defendants sanctions of $5,000.  The Court further ordered that the Debtor "may offer no documents at the time of trial responsive to documents requested by Defendants."

On March 31, 2011, Debtor substituted himself *in pro per* in place of Mr. Crowder.

The matter came on for trial on April 7, 2011, with Debtor appearing *in pro per*, and Defendants Nicholson and Shahbaz appearing for themselves.  The Judgment entered on June 15, 2011, recites that Defendants did not know of the Debtor's bankruptcy filing until May 27, 2009, and therefore the placement of a levy on the Debtor's bank account was not a violation of the stay.  However, the Defendants' failure to immediately release the levy and to recall the writ of execution after becoming aware of the bankruptcy filing was a violation of the automatic stay.  Defendant Nicholson's taking of money obtained through the levy was a further violation of the stay in Debtor's second bankruptcy case.

The Court found that Debtor was damaged in the amount of $5,868.

The Court order that the prior discovery sanctions Order of April 1, 2011, awarding sanctions of $5,000 against the Debtor and in favor of Defendant Nicholson remained standing.

The court also held Defendant Shahbaz harmless as she was in technical violation of the stay but no damages to Debtor flowed from such violation.  Judgment was awarded in favor of Shahbaz

Accordingly, judgment was awarded in favor of Debtor for the net amount of $868.

On the same day the Judgment was entered, June 15, 2011, the Debtor moved to recuse Judge Riblet.  That motion was set for hearing on June 29, 2011, however, the motion was later withdrawn.

Nearly a year later on May 11, 2012, the Debtor filed a "Motion to Redress Damages Caused by Defendants Actions."  The motion asserted that at the time of hearing the Debtor was unable to address the full extent of the damages caused by the violation of the automatic stay.  The execution of the levy prevented him from making post-petition payments which ultimately caused the Debtor to lose his home.  Thus, the damages he sustained were greater than what he was able to show at trial on April 7, 2011.  Debtor estimated he lost approximately $300,000 in home improvements and equity.

Unfortunately, the motion was improperly self-calendared. Thereafter, the Debtor failed to pursue his motion to redress damages despite a warning by the clerk's office that, "This case will be closed in 30 days if there is no follow-up on the motions." A copy of the docket entry with this statement was mailed to the

6

debtor on May 31, 2013.

Adversary case 09-1144 was thereafter closed (with the court's permission) on July 26, 2013.

A motion to reopen was thereafter filed by the Debtor, *in pro per* on December 5, 2013.  The instant motion to Recuse Judge Riblet was filed on December 16, 2013.


Adversary 09-ap-1286 Ortega v. Central Mortgage, et al

This complaint, also filed in conjunction with the first bankruptcy petition, sought to restore legal title to foreclosed property, for injunctive relief, for declaratory judgment, and for violation of the automatic stay.  Debtor named Central Mortgage Co, William G. Malcolm, U.S. Bank, Downey Savings & Loan Assn, Recovery Management Systems Corp, and Ramesh Singh.  The subject of the complaint was the debtor's Ventura residence at 10445 Hugo Court, purchased in 2002.  Allegedly, the debtor was deceived into a refinancing at some time in 2004.  Debtor alleged several irregularities in the loan approval process, the witnessing of his signature by someone other than the notary who notarized the loan documents, and issues with his limited English-speaking abilities.

Due to injuries as a result of a car accident in 2008, Debtor became delinquent in his mortgage payments.  Purportedly, Debtor was not served with the Notice of Trustee's sale.  He filed his Chapter 13 bankruptcy petition on March 25, 2009, one day prior to the foreclosure sale and allegedly notified the lender of the filing.  Debtor alleges that Central Mortgage ignored the automatic stay and

7

foreclosed on March 26, 2009.  Subsequently, Central Mortgage

acknowledged the bankruptcy by filing a proof of claim and objecting

to the debtor's proposed Chapter 13 Plan.  The complaint sought a

declaration that the foreclosure was void, for restoration of title,

and for a determination that Defendants were in violation of the

automatic stay.

Central Mortgage and U.S. Bank moved to dismiss the complaint,

which motion was denied.  An amended complaint was filed May 27,

2010.  The amended complaint appeared to present the same legal

allegations but named different defendants.  Central Mortgage,

William Malcolm, U.S. Bank and Downey Savings and Loan continued to

be named as defendants.  Debtor named three additional and new

defendants:  MTC Financial, Inc. dba Trustee Corps, Nivin T. Youser,

and Ryan Newman.  Defendants Recovery Management Systems and Ramesh

Singh were not named in the amended complaint.

Thereafter, Central Mortgage, Downey Savings, Malcolm and U.S.

Bank moved to dismiss the amended complaint.  An Order Striking the

First Amended Complaint for failure to comply with B.R. 7015 was

entered on July 27, 2010.

Defendants Central Mortgage, Malcolm and U.S. Bank moved for

summary judgment, which motion was granted at hearing on Feb. 22,

2011, with an Order entered on March 2, 2011. The Debtor substituted

himself in as *in pro per*, and thereafter filed a Notice of Appeal on

April 1, 2011.

On August 2, 2011, the Debtor moved to vacate the judgment.

On Sept. 16, 2011, the Debtor withdrew his appeal.

8

On Sept. 28, 2011, this Court entered an Order Denying Motion to Vacate the Judgment on the grounds that Plaintiff/Debtor's notice of appeal, filed four months prior to the motion to vacate judgment, divested the Bankruptcy Court of jurisdiction to reconsider, alter, amend or vacate its order.

Adversary proceeding 09-ap-1286 was thereafter closed on April 17, 2012.

The instant motion to Recuse Judge Riblet was also filed in 09-ap-1286 by the Clerk's office because the debtor listed both adversary numbers on his pleadings.

## II    Motion to Recuse Judge Riblet

The motion requests Judge Riblet "recuse herself from conducting any further ruling in the cases [based on] intimidation, unfair rulings, conflict of interest, and failure to state in open Court an existing relationship between the Court" and a party in interest (Michael Towbes). Debtor asserts that at a status conference on October 6, 2009, the "first act of intimidation" by the Court was the Court's reference to Michael Towbes (purportedly the owner of Montecito Bank and Trust) "by personal name," when Mr. Towbes, "a friend of the Court, was not named in the adversary proceeding, however, Mr. Towbes, is the owner [of] Montecito Bank, one of the Defendants." The Debtor alleges that after the "intimidating manner in which the Court referred or insinuated [to] being friends with Mr. Towbes, Plaintiff opted to dismiss Defendants Montecito Bank and Trust and Tino Garcia in order to avoid

9

conflicting retaliations with the Court's friend, Mr. Towbes."

It is further alleged that throughout the proceedings, the "Court gave preferential treatment to all the Defendants, including but not limited to Defendant Nicholson, during the entire proceeding the Court distinguished Plaintiff, who did not receive impartial and fair treatment."  Specifically, "unjustified imposition of sanctions to the Plaintiff in favor of Defendant, Nicholson, constitute favoritism and imposed a hardship on the Plaintiff who was seeking to recover $5,654 which the Defendant obtained by violating the automatic stay that caused the Plaintiff the inability to make postpetition payments in a Chapter 13."

The motion makes several additional allegations which appear to relate to the 09-ap-1144 Adversary against Nicholson, to wit:

·    The violations of the automatic stay by Nicholson compelled Debtor to file another case - a Chapter 7 - which was costly and lengthy and ultimately caused the Debtor to lose his home because the funds needed to make the payments were taken by Nicholson;

·    That Nicholson violated the Fair Debt Collection Procedures Act, which violation needs to be redressed in the form of punitive damages;

·    That Nicholson improperly served litigation documents with Defendants in an unrelated matter, which constituted ethical misconduct;

- That the Debtor will seek redress of the sanctions imposed against him which constitute more than 90% of the funds which the Debtor was seeking to recover from Nicholson for his violation of the automatic stay;

- If the Debtor moves to redress damages, he does not believe Judge Riblet will be impartial;

- On June 29, 2011, at hearing on Debtor's prior motion to recuse Judge Riblet, the Court assured the Debtor that it would exercise discretion, when in fact the Court was not impartial;

- Also on June 29, 2011, the Court stated, "Mr. Ortega, your case has gotten tricky at the end that is why the [$5,000.00] sanction was imposed on you ..."

The motion for recusal then makes several allegations which appear to relate to the 09-ap-1286 adversary against Central Mortgage. Debtor contends that he filed a Motion to Vacate Judgment on August 2, 2011, based upon newly discovered evidence and the ineffective representation by counsel. The Debtor argues that the Court denied his motion and "erroneously asserted 'the appeal remains pending,' when in fact, Plaintiff has filed an appeal withdrawal on August 2, 2011, the same day the motion was filed."[1]

Debtor's motion for recusal is brought under 28 U.S.C. §§455(b)(1) and 144. The motion is supported by the Declaration of

---

[1] According to the docket in 09-ap-1286, the Order Granting Motion for Summary Judgment was entered on March 2, 2011. The Notice of Appeal was filed on April 1, 2011. Debtor's Motion to Vacate Judgment was filed on August 2, 2011. Debtor's Withdrawal of Appeal was not filed until September 16, 2011. This Court's Order Denying Motion to Vacate Judgment was entered on September 28, 2011.

Jorge Ortega, which declaration closely parallels the statements set

forth in the motion. The motion was filed in conjunction with a

separate Motion to Reopen filed in adversary 09-ap-1144.


**III  28 U.S.C. §455**

As an initial matter, 28 U.S. C. §144 is inapplicable, as that

section applies only to judges conducting proceedings "in a district

court."  Bankruptcy court judges are subject to recusal only under

28 U.S.C. §455.  B.R. 5004(a); In re Smith, 317 F.3d 918, 932 (9th

Cir. 2002), *abrogated on other grounds* Lamie v. U.S. Trustee, 540

U.S. 526 (2004).  Accordingly, the Court considers this motion under

28 U.S.C. §455.

Title 28 U.S.C. §455 contains no procedure for recusal.  It is

deemed to be "self-enforcing on the part of the judge."  United

States v. Simla, 624 F.2d 864, 867-68 (9th Cir. 1980).  A judge at

whom a section 455 motion for recusal is directed must determine

whether recusal is warranted.  In re Bernard, 31 F.3d 842, 843 (9th

Cir. 1994), citing U.S. v. Silva, 624 F.2d at 868 and United States

v. Balistrieri, 779 F.2d 1191, 1202-03 (7th Cir. 1985).

Accordingly, the Court should find this matter appropriate for

consideration without a hearing.

Title 28 U.S.C. §455 provides, in pertinent part:

> (a) Any ... judge ... shall disqualify himself
> in any proceeding in which his impartiality
> might reasonably be questioned.

> (b) He shall also disqualify himself in the
> following circumstances:

> (1) Where he has a personal bias or

12

> prejudice concerning a party, or personal
> knowledge of disputed evidentiary facts
> concerning the proceeding;

>     (2) Where in private practice he served as
> lawyer in the matter in controversy, or a lawyer
> with whom he previously practiced law served
> during such association as a lawyer concerning
> the matter, or the judge or such lawyer has been
> a material witness concerning it.

28 U.S.C. §455.

Section 455 requires disqualification of a judge "to be

evaluated on an *objective* basis, so that what matters is not the

reality of bias or prejudice, but its appearance." Liteky v. United

States, 510 U.S. 540, 548 (1994). Section 455 is to be applied with

strictness in the "view of the average, reasonable person [which] is

the standard for analysis as to whether a judge shall disqualify

himself or herself." In re Faulkner, 856 F.2d 716, 720 (5th Cir.

1988), citing Lilieberg v. Health Services Acquisition Corp., 486

U.S. 847 (1988).

As explained by the Ninth Circuit Court of Appeals:

> In analyzing §455(a) disqualification motions,
> we employ an objective test: "'whether a
> reasonable person with knowledge of all the
> facts would conclude that the judge's
> impartiality might reasonably be questioned.'" .
> . . Section 455(a) asks whether a reasonable
> person perceives a significant risk that the
> judge will resolve the case on a basis other
> than the merits." . . .  The "reasonable person"
> in this context means a "well-informed,
> thoughtful observer," as opposed to a
> "hypersensitive or unduly suspicious person." .
> . .

>     In determining whether disqualification is
> warranted under §455(a) claims are fact driven,
> and as a result, the analysis of a particular
> section 455(a) claim must be guided, not by
> comparison to similar situations addressed by

prior jurisprudence, but rather by an
independent examination of the unique facts and
circumstances of the particular claim at issue."
. . .  The Tenth Circuit has compiled a helpful,
nonexhaustive list of various matters not
ordinarily sufficient to require a §455(a)
recusal.  These include:

> (1) Rumor, speculation, beliefs,
> conclusions, innuendo, suspicion, opinion,
> and similar non-factual matters; (2) the
> mere fact that a judge has previously
> expressed an opinion on a point of law or
> has expressed a dedication to upholding the
> law or a determination to impose severe
> punishment within the limits of the law
> upon those found guilty of a particular
> offense; (3) prior rulings in the
> proceeding, or another proceeding, solely
> because they were adverse; (4) mere
> familiarity with the defendant(s), or the
> type of charge, or kind of defense
> presented; (5) baseless personal attacks on
> or suits against the judge by a party; (6)
> reporters' personal opinions or
> characterizations appearing in the media,
> media notoriety, and reports in the media
> purporting to be factual, such as quotes
> attributed to the judge or others, but
> which are in fact false or materially
> inaccurate or misleading; and (7) threats
> or other attempts to intimidate the judge.
> . .

> As the Tenth Circuit also rightly observed,
a judge has "as strong a duty to sit when there
is no legitimate reason to recuse as he does to
recuse when the law and facts require."

Clemens v. U.S. District Court for Central District of California,
428 F.3d 1175, 1178-79 (9th Cir. 2005) (internal citations omitted).

The Debtor here seeks disqualification based on the following

purported examples of alleged bias and partiality:

· That the Judge had a conflict of interest based on an alleged

friendship with Michael Towbs.   Motion at 2: 5- 21.

14

· That the Judge gave preferential treatment to all Defendants during the entire proceedings.  Motion at 2: 22-25

· That the Debtor did not receive impartial and fair treatment. Motion at 2: 25; 3: 18 - 24.

· That the imposition of sanctions against the Debtor was unjustified and constituted favoritism.  Motion at 2: 26 - 3:2.

· That the imposition of sanctions against the Debtor imposed a hardship.  Motion at 2: 26 - 3:2.

· That the Judge denied Debtor's Motion to Vacate Judgment of August 2, 2011, erroneously.  Motion at 4: 2 - 7.

· That the Judge will not be impartial if Debtor moves to redress damages.  Motion at 3: 14 - 20.

The remaining allegations in the Motion for Recusal appear to relate to actions of the parties and are not allegations related to recusal of the Judge.  Specifically, the Debtor alleges that Attorney Nicholson's actions compelled him to file his second bankruptcy petition under Chapter 7, resulting in the loss of his home; that Nicholson violated the Fair Debt Collection Procedures Act; and that Nicholson engaged in ethical misconduct by sharing documents in an unrelated matter.

**IV   The Motion for Recusal is Untimely**

This motion was not timely filed.  While there is no fixed deadline or time frame in which recusal motions should be filed, recusal motions should be filed with reasonable promptness after the ground for filing such motion is ascertained.  <u>Preston v. United States</u>, 923 F.2d 731, 733 (9th Cir. 1991), citing <u>United States v.</u>

<u>Furst</u>, 886 F.2d 558, 581-82, n. 30 (3d Cir. 1989).  Recusal motions must be lodged timely so as to preclude wasted judicial time and resources, and to prevent litigants from using recusal motions for strategic purposes.  <u>Id</u>., citing <u>In re International Business Machines Corp</u>., 618 F.2d 923, 933 (2d Cir. 1980) and <u>Ex Parte American Steel Barrel Co. and Seaman</u>, 230 U.S. 35, 44 (1913).

Debtor's motion for recusal was filed over four and one-half years after the dismissal of his first bankruptcy case, 09-10989, and nearly three years after that first bankruptcy case was closed.  The motion for recusal was filed two and one-half years after Judgment was entered in adversary proceeding 09-ap-1144, which Judgment was entered on June 15, 2011, and even longer after an Order Granting Summary Judgment was entered in adversary proceeding 09-ap-1286, which Order was entered on March 2, 2011. [1]

The record further reflects that the Debtor filed a prior Motion to Recuse Judge Riblet on June 15, 2011, in 09-ap-1144.  That prior motion, however, was withdrawn.  Debtor also filed a motion to redress damages in May 2012.  That motion was never set for hearing and never prosecuted.

---

[1] While issues related to a future motion for reconsideration or for relief from the Court's prior Judgment or Order are not presently before the Court, any such motion for relief would likely be time barred under the provisions of B.R. 9023 and 9024.  Under B.R. 9023, a motion for new trial must be filed no later than 28 days after the entry of judgment.  Under B.R. 9024, a motion for relief from a judgment, order or proceeding must be made within a reasonable time, and if on the basis of mistake, inadvertence, surprise or excusable neglect, or for newly discovered evidence, or on the basis of fraud, the motion must be made no more than a year after entry of the judgment or order or the date of the proceeding.

Subsequent to the granting of summary judgment in 09-ap-1286, the debtor filed a notice of appeal which was later withdrawn; and a motion to vacate judgment, with was denied on September 28, 2011, over two years ago.

The events cited as the basis for recusal occurred several years ago.  Thus, the Debtor's motion for recusal has clearly not been filed with the required reasonable promptness after the ground for filing such motion was ascertained.  Preston v. U.S., 923 F.2d at 733.

**V    Recusal on the Basis of Judicial Rulings is not Warranted**

Had the motion been timely filed, it also fails for lack of merit.  To the extent the Debtor complains of prior judicial rulings made and statements uttered by this Court during the course of the administration of the prior bankruptcy cases or during the course of litigation of the two prior adversary proceedings, there is no basis for recusal.  All of the actions of which the Debtor complains occurred within the judicial proceedings of the Debtor's bankruptcy cases.  None of the referenced statements or rulings stem from extrajudicial factors or from sources other than the judicial proceedings held in these bankruptcy cases.  Opinions formed by a judge as the result of earlier proceedings are not a basis for recusal for bias or prejudice, since such "knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task."  Liteky v. U.S., 510 U.S. at 551.  As explained by the U.S. Supreme Court:

17

First, judicial rulings alone almost never
constitute a valid basis for a bias or
partiality motion.  See <u>United States v.
Grinnell Corp.</u>, 384 U.S. at 583, 86 S.Ct. At
1710.  In and of themselves (*i.e.*, apart from
surrounding comments or accompanying opinion),
they cannot possibly show reliance upon an
extrajudicial source; and can only in the rarest
circumstances evidence the degree of favoritism
or antagonism required . . . when no
extrajudicial source is involved.  Almost
invariably, they are proper grounds for appeal,
not for recusal.  Second, opinions formed by the
judge on the basis of facts introduced or events
occurring in the course of the current
proceedings, or of prior proceedings, do not
constitute a basis for a bias or partiality
motion unless they display a deep-seated
favoritism or antagonism that would make fair
judgment impossible.  Thus, judicial remarks
during the course of a trial that are critical
or disapproving of, or even hostile to, counsel,
the parties, or their cases, ordinarily do not
support a bias or partiality challenge.  They
*may* do so if they reveal an opinion that derives
from an extrajudicial source; and they *will* do
so if they reveal such a high degree of
favoritism or antagonism as to make fair
judgment impossible.  An example of the latter
(and perhaps the former as well) is the
statement that was alleged to have been made by
the District Judge in <u>Berger v. United States</u>,
255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921),
a World War I espionage  case against German-
American defendants.  "One must have a very
judicial mind, indeed, not [to be] prejudiced
against the German Americans" because their
"hearts are reeking with disloyalty."  <u>Id</u>., at
28 (internal quotation marks omitted).  *Not*
establishing bias or partiality, however, are
expressions of impatience, dissatisfaction,
annoyance, and even anger, that are within the
bounds of what imperfect men and women, even
after having been confirmed as federal judges,
sometimes display.  A judge's ordinary efforts
at courtroom administration - even a stern and
short-tempered judge's ordinary efforts at
courtroom administration - remain immune.

<u>Liteky v. U.S.</u>, 510 U.S. at 555-56 (emphasis in the original).

Judicial rulings, trial administration efforts, and ordinary admonishments to counsel, parties and witnesses are inadequate grounds for recusal because judicial ruling are property grounds for appeal, not for recusal.  Id.  The record reflects that the Debtor availed himself of the right to appeal in 09-ap-1286 but later withdrew that appeal.  The record also reflects that the Debtor previously moved for recusal of Judge Riblet in 09-ap-1144 but later withdrew his motion.

None of the grounds asserted by the Debtor here requires disqualification.  The grounds cited by the Debtor herein consist of judicial rulings.  As was the case in Liteky, none of the Court's decisions "relied upon knowledge acquired outside" the Bankruptcy Court proceedings and none of the Court's decisions "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible."  Liteky v. U.S., 510 U.S. at 556.

**VI   Recusal on the Basis of a Purported Friendship with a non-party is not Warranted**

To the extent the Debtor seeks recusal on the basis of a purported friendship between the Judge and Michael Towbes, this Judge not only does not have a friendship, social or business relationship with Mr. Towbes, the Judge has never met the gentleman. However, one would have to live under a rock in this city not to know who he is.

**VII  Motion to Reopen**

Debtor seeks to reopen 09-ap-1144 "to recover damages caused by

the Defendants [sic] actions."

   In the Ninth Circuit, reopening of a bankruptcy case is merely ministerial; reopening by itself has no independent legal significance and determines nothing with respect to the merits of the case.  DeVore v. Marshack (In re DeVore), 223 B.R. 193 (9th Cir. BAP 1998).  A bankruptcy court need not reopen a closed case unless it finds that further administration of the case appears to be warranted.  See In re Lopez, 283 B.R. 22 (9th Cir. BAP 2002).

>     Under the above provisions, reopening a case
>     is typically ministerial and "presents only a
>     narrow range of issues: whether further
>     administration appears to be warranted; whether
>     a trustee should be appointed; and whether the
>     circumstances of reopening necessitate payment
>     of another filing fee."  Menk v. LaPaglia (In re
>     Menk), 241 B.R. 896, 916-17 (9th Cir. BAP 1999).
>      Cf. Beezley v. California Land Title Co. (In re
>     Beezley), 994 F.2d 1433, 1434 (9th Cir. 1993)
>     (denying reopening to schedule creditor in no-
>     asset case, because "dischargeability is
>     unaffected by scheduling; amendment of Beezley's
>     schedules would thus have been a pointless
>     exercise.").
>
>     Therefore, although a motion to reopen is
>     addressed to the sound discretion of the
>     bankruptcy court, "the court has the duty to
>     reopen an estate whenever prima facie proof is
>     made that it has not been fully administered."
>     Herzig, 96 B.R. at 266.  In particular, it is an
>     abuse of discretion to deny a motion to reopen
>     where "assets of such probability,
>     administrability, and substance" appear to exist
>     "as to make it unreasonable under all the
>     circumstances for the court not to deal with
>     them."  Id.  (quotation marks and citation
>     omitted).  **A motion to reopen can be denied,
>     however, where the chance of any substantial
>     recovery for creditors appears "'too remote to
>     make the effort worth the risk.'"**  Id. (citation
>     omitted).

Lopez, 283 B.R. at 26-27 (emphasis added).

Here, the Debtor seeks to recover alleged damages for himself personally and not for creditors.  Furthermore, any such relief would likely be time barred under the provisions of B.R. 9023 and 9024.  Accordingly,

**IT IS HEREBY ORDERED** that the Request for Recusal is DENIED.

**IT IS HEREBY FURTHER ORDERED** that the Motion to Reopen is DENIED.

###

Date: December 23, 2013

_Robin Riblet_

Robin L. Riblet
United States Bankruptcy Judge